1  Kathleen C. Jeffries (State Bar #110362)
   kjeffries@scopelitis.com
2  SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
   2 North Lake Avenue, Suite 560
3  Pasadena, California 91101
   Telephone: (626) 795-4700
4  Facsimile:  (626) 795-4790

5  Attorneys for Plaintiff
   HUEMEN, INC. dba WERKSHOPPE
6

7

8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

| HUEMEN, INC., a California Corporation doing business as WERKSHOPPE, | ) ) ) | Case No. |
|---|---|---|
| Plaintiff, | ) ) ) ) | COMPLAINT FOR DAMAGES: |
| v. | ) ) ) | 1. Breach of Contract<br>2. Breach of the Implied Warranty of Fitness for a Particular Purpose |
| LUDO FACT USA LLC., an Indiana Limited Liability Company, | ) ) ) ) | 3. Breach of Implied Warranty of Merchantability<br>4. Unjust Enrichment |
| Defendants. | ) ) ) | **JURY TRIAL DEMANDED** |

Plaintiff, HueMen, Inc., doing business as WerkShoppe ("Plaintiff" or "WerkShoppe"), by and through its undersigned counsel, files this Complaint against Defendant, Ludo Fact USA LLC ("Defendant" or "Ludo Fact"), and in support thereof, avers as follows:

**PARTIES**

1.  WerkShoppe is a California corporation with its principal place of business in Palm Springs, California.

2.  Ludo Fact is an Indiana limited liability company, a subsidiary of a German corporation (Ludo Fact GMBH) with a facility in Indiana.  All

1
COMPLAINT FOR DAMAGES

members of Ludo Fact are citizens of Indiana, Germany, and/or states other than California.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the dispute is between diverse citizens and the amount in controversy exceeds $75,000.00.

4. This Court has personal jurisdiction over the Defendant, as Ludo Fact regularly sells goods within the state of California, caused harm to a California resident, and has purposefully availed itself of the privilege of conducting business in this state.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims at issue occurred in this district, and Ludo Fact is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

6. WerkShoppe is a gathering place where artistic collaborations with emerging and independent artists are turned into creative products, including jigsaw puzzles. WerkShoppe sells its products using a wholesale network of national sales reps (B2B) and through its website (B2C).

7. The bedrock of WerkShoppe's business is its meticulously curated art, reputation for high quality jigsaw puzzles, and reliability.

8. In or around March 2021, as part of an effort to manufacture its puzzles in the United States, WerkShoppe began to engage Ludo Fact to manufacture its puzzles designed by WerkShoppe artists.

9. The material terms of Ludo Fact's engagement, including manufacturing specifications and cost, are set forth in purchase orders WerkShoppe

provided to Ludo Fact for each batch of puzzles, coupled with accompanying documents and representations.

10. Ludo Fact accepted such offers by agreeing to strictly adhere to the terms of the purchase orders and by performance.

11. Accordingly, both parties manifested an intention to be bound by the terms of the purchase order agreements.

12. The terms of the purchase order agreements are sufficiently definite to be specifically enforced.

13. Thus, a series of contracts existed between WerkShoppe and Ludo Fact, including their essential terms.

14. After Ludo Fact manufactured the puzzles, it would typically place them in sealed polybags, package them in tubes, and ship them to a WerkShoppe warehouse in Palm Springs, California, which would, in turn, ship the puzzles to end consumers.

15. Certain shipments were also sent from Ludo Fact to Barnes & Noble retail locations in Nevada and New Jersey, as well as a third-party logistics warehouse in Indiana.

16. But, according to Ludo Fact's own data, Ludo Fact shipped more puzzles to WerkShoppe's warehouse in Palm Springs, California (measured both by quantity and by value) over the course of the parties' relationship than any other destination.

17. Palm Springs is also the only destination where Ludo Fact shipped goods to WerkShoppe throughout the entirety of the parties' relationship. In contrast, Ludo Fact only shipped goods (six orders in total) to the Indiana third-party logistics warehouse during two months: June and August 2022.

18. Because WerkShoppe had no reasonable opportunity to inspect the puzzles in this supply chain after their manufacture, it was essential to

WerkShoppe that it be able to rely upon Ludo Fact to manufacture first-quality puzzles that strictly adhered to the agreed specifications in the purchase orders. WerkShoppe specifically made this known to Ludo Fact in connection with Ludo Fact's agreement to manufacture puzzles for WerkShoppe.

19. In 2021, WerkShoppe began to receive complaints from customers in California and elsewhere that the puzzles Ludo Fact manufactured and WerkShoppe sold had clear breaches of the material specifications set forth in the purchase orders, including (but not limited to): broken pieces, miscut pieces, and missing pieces. Multiple purchase orders for puzzles manufactured in June 2022 by Ludo Fact had the wrong finish not in compliance with such purchase orders.

20. Initially unaware of the vast scope of the manufacturing defects, and based upon Ludo Fact's repeated representations that it had complied with all material terms of the purchase orders, WerkShoppe assumed these to be isolated incidents and attempted to reach a negotiated resolution with Ludo Fact.

21. WerkShoppe also performed all of its own contractual obligations to Ludo Fact by making payment of what WerkShoppe believed at the time to be the reasonable value of the puzzles in the condition received.

22. However, WerkShoppe continued to receive an ever-increasing number of customer complaints about the puzzles manufactured by Ludo Fact with alarming frequency.

23. Despite repeated requests by WerkShoppe, Ludo Fact was unable and/or unwilling to provide any quality control records that would allow WerkShoppe to ascertain the scope of the manufacturing defects with its puzzles.

24. So, in order to determine the true scope of the manufacturing defects, WerkShoppe was forced to conduct a randomized quality control sampling of the puzzles Ludo Fact manufactured for WerkShoppe.

///

25. Despite specific invitation from WerkShoppe, Ludo Fact declined to participate in this quality control sample.

26. This sample required hundreds of hours of labor over a period of two months to obtain puzzles, and then put them together piece-by-piece to identify defective and missing pieces.

27. This representative sample found that all of the puzzles Ludo Fact manufactured were defective due to having the wrong finish.

28. The random sampling also found that approximately forty percent of the puzzles Ludo Fact manufactured were additionally defective due to missing and/or defective pieces.

29. The sampling found that there was no way to know which puzzles had missing and defective pieces without: (a) having all puzzles shipped from a warehouse, (b) opening the sealed puzzles, and (c) putting all puzzles together piece-by-piece. Many puzzles have 1,000 pieces or more.

30. Given the prevalence of the defects, coupled with the absence of any obvious way to identify the specific defects any discrete puzzle may have – other than defective finish, which applies to all puzzles – the puzzles Ludo Fact manufactured for WerkShoppe are completely worthless.

31. Each and every puzzle Ludo Fact manufactured was defective, and the costs of identifying the specific defects for each individual puzzle (to determine if it has any salvage value) would greatly exceed the puzzle's value.

32. Ludo Fact's actions have also caused WerkShoppe to sustain substantial additional damages, including (but not limited to): the costs of shipping countless replacement puzzles, repackaging and reprocessing costs, additional materials costs, costs associated with paying a third party to store and ship a worthless product, as well as significant lost additional labor costs and/or opportunity costs.

33. Ludo Fact's actions have further caused WerkShoppe to experience significant losses of customer goodwill and reputational harm that will cause WerkShoppe to experience future and continuing harm.

34. Due to Ludo Fact's actions, WerkShoppe has experienced damages in an amount to be determined at trial, but in a currently-estimated amount of no less than $450,000.00.

**COUNT I – BREACH OF CONTRACT**

35. Plaintiff hereby incorporates by reference the preceding paragraphs as though set forth at length herein.

36. Via the purchase orders, WerkShoppe and Ludo Fact entered into a series of valid and binding contracts, the material terms of which included manufacturing specifications.

37. In breach of these contracts, Ludo Fact failed to manufacture WerkShoppe's puzzles in a manner that conformed to the standards established by the purchase orders.

38. Instead, Ludo Fact provided puzzles with: the incorrect finish, extra or missing pieces, the wrong cuts, and other material defects that were in clear breach of the parties' purchase order agreements.

39. WerkShoppe performed all of its own contractual obligations to Ludo Fact.

40. These breaches caused significant actual and prospective damages to WerkShoppe, as set forth herein, of no less than $450,000.00.

**COUNT II – BREACH OF THE IMPLIED WARRANTY**
**OF FITNESS FOR A PARTICULAR PURPOSE**

41. Plaintiff hereby incorporates by reference the preceding paragraphs as though set forth at length herein.

/ / /

42. WerkShoppe intended to use the puzzles it purchased from Ludo Fact for a particular purpose: namely to sell whole, first quality, and properly manufactured puzzles to WerkShoppe customers.

43. Ludo Fact had reason to know WerkShoppe's particular purpose at the time of purchase.

44. WerkShoppe relied upon on Ludo Fact's skill and judgment in manufacturing the puzzles that Ludo Fact sold to WerkShoppe, and WerkShoppe then sold to its customers.

45. Ludo Fact had reason to believe that WerkShoppe was relying on Ludo Fact's skill and judgment when manufacturing the puzzle pieces.

46. WerkShoppe, in fact, relied on Ludo Fact's skill and judgment.

47. Ludo Fact breached the warranty of fitness for a particular purpose by selling WerkShoppe substandard and defective puzzles, as set forth herein.

48. WerkShoppe was damaged by Ludo Fact's actions, as set forth herein, in an amount of no less than $450,000.00.

**COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

49. Plaintiff hereby incorporates by reference the preceding paragraphs as though set forth at length herein.

50. Ludo Fact is a "buyer" under the California Commercial Code (and the uniform commercial codes of all other states relevant to this matter).

51. The implied warranty of merchantability is imposed by operation of law for the protection of the buyer in situations such as the one at issue here.

52. This warranty specifies that the goods shall be merchantable if the seller is a merchant with respect to goods of that kind.

///

53. Ludo Fact is a merchant of puzzle pieces, and it was implied in the contracts for sale that the puzzles it manufactured for WerkShoppe would be merchantable, in accordance with the minimum specifications set forth in the purchase orders, and fit for ordinary use.

54. For the reasons set forth herein, the puzzles Ludo Fact sold to WerkShoppe were not merchantable and not fit for the ordinary purposes for which puzzles are used.

55. In fact, the puzzles did not possess even the most basic degree of fitness for ordinary use.

56. WerkShoppe now seeks to recover its damages, in an amount to be determined at trial, of no less than $450,000.00.

## COUNT IV – UNJUST ENRICHMENT

57. Plaintiff hereby incorporates by reference the preceding paragraphs as though set forth at length herein.

58. Defendant Ludo Fact failed to produce puzzles pursuant to the terms specified in WerkShoppe's purchase orders, yet continued to reap monetary benefits from the purchase orders by demanding and/or collecting payment from WerkShoppe on goods that Ludo Fact knew or should have known to be worthless.

59. Ludo Fact has also reaped the benefits of WerkShoppe's random quality control sampling that otherwise should have been performed by Ludo Fact.

60. Ludo Fact has derived profits resulting from the purchase orders while avoiding its responsibilities and duties owed to WerkShoppe as the purchasing party.

61. By profiting from the purchase orders, refusing to perform the basic responsibilities and duties of a manufacturer, and reaping the benefits of WerkShoppe's quality control efforts, Ludo Fact has retained a benefit at WerkShoppe's expense, the retention of which would be inequitable and unjust.

62. WerkShoppe now seeks to recover its actual and prospective damages, as set forth herein, of no less than $450,000.00.

## PRAYER FOR RELIEF

**On the First Count**:

a. For damages in the amount to be proved at trial, and currently estimated at no less than $450,000, plus interest, costs, and finance charges;

b. For attorneys' fees and costs as may be allowed by contract or statute; and

c. For such other relief that the Court deems proper.

**On the Second Count:**

a. For damages in the amount to be proved at trial, and currently estimated at no less than $450,000, plus interest, costs, and finance charges;

b. For attorneys' fees and costs as may be allowed by contract or statute; and

c. For such other relief that the Court deems proper.

**On the Third Count:**

a. For damages in the amount to be proved at trial, and currently estimated at no less than $450,000, plus interest, costs, and finance charges;

b. For attorneys' fees and costs as may be allowed by contract or statute; and

c. For such other relief that the Court deems proper.

///

///

///

**On the Fourth Count:**

a. For damages in the amount to be proved at trial, and currently estimated at no less than $450,000, plus interest, costs, and finance charges;

b. For attorneys' fees and costs as may be allowed by contract or statute; and

c. For such other relief that the Court deems proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 24, 2023

SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP

By: */s/ Kathleen C. Jeffries*
Kathleen C. Jeffries
Attorneys for Plaintiff
HUEMEN, INC. dba WERKSHOPPE

Courtesy Copies Requested:

Christopher J. Merrick, Esquire
Krishna A. Jani, Esquire
FLASTER GREENBERG PC
100 Front Street, Suite 100
Conshohocken, PA 19428
Telephone: (215) 279-9909
Email: chris.merrick@flastergreenberg.com
Email: krishna.jani@flastergreenberg.com

4880-8356-3353, v. 4